Return To:

Argent Mortgage Company, LLC
P.O. Box 5047 Rolling
Meadows, IL 60008

**2005K068340**



SANDY WEGMAN
RECORDER
KANE COUNTY, IL

RECORDED ON
06/16/2005   12:37PM

REC FEE:  40.00
PAGES:    19

Prepared By:Argent Mortgage Company, LLC

Ronald Szymczyk Jr.
1701 Golf Road,Rolling
Meadows, IL 60008

Redacted

Exhibit A

THIS INSTRUMENT MERGED
IN A DECREE OF FORECLOSURE
ENTERED IN CASE NO. *06CH35*
IN THE CIRCUIT COURT OF KANE
COUNTY, ILLINOIS THE 13TH
DAY OF OCTOBER 2006

[Above This Line For Recording Data]

## MORTGAGE

TRISTAR TITLE LLC
1301 W 22ND ST, STE101
OAK BROOK, ILLINOIS 60523
630-954-4000

Redacted

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 29, 2005
together with all Riders to this document.
(B) "Borrower" is SCOTT A SCHARLOW and JANET A SCHARLOW, As Joint Tenants

Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted
Redacted

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

Redacted

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014  1/01

VMP -6(IL) (0005)
Page 1 of 15                  Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

04/29/2005 8:54:45 AM

Redacted

Lender's address is One City Boulevard West   Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated April 29, 2005
The Note states that Borrower owes Lender two hundred sixty-three thousand five
hundred and 00/100                                                           **Dollars**
(U.S. $263,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2035

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.



-6(IL) (0005)                    Page 2 of 15    04/29/2005 8:54:45   Form 3014  1/01

2

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the

County                                                                    [Type of Recording Jurisdiction]
of KANE                                              [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: Redacted                               which currently has the address of
301 ALDRIN AVE                                                                      [Street]
BATAVIA                                                        [City], Illinois 60510    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

3

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the





lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



6

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.





8

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender





to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.





-6(IL) (0005)          Page 10 of 15     04/29/2005 8:64:45     Form 3014    1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Redacted

11

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



 -6(IL) (0005)

0472972005  6:34:45

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

  -6(IL) (0005)

Page 13 of 15    04/29/2005  8:54:45    Form 3014   1/01


Redacted

13

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)

                              SCOTT A SCHARLOW            -Borrower


_____        _____ (Seal)

                              JANET A SCHARLOW            -Borrower


_____ (Seal)        _____ (Seal)
              -Borrower                                  -Borrower


_____ (Seal)        _____ (Seal)
              -Borrower                                  -Borrower


_____ (Seal)        _____ (Seal)
              -Borrower                                  -Borrower



 -6(IL) (0008)                    Page 14 of 15 04/29/2005 8:54:45 AM Form 3014   1/01

**STATE OF ILLINOIS,** *Cook* **County ss:**

I, *Michael R. Ritter* _____ a Notary
Public in and for said county and in said state, hereby certify that

*Scott A. Sharlow & Janet A. Sharlow* _____

_____

_____

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

Given under my hand and official seal of this *27th of April* . *05*

**My Commission Expires:** _____

_____
**Notary Public**

"OFFICIAL SEAL"
MICHAEL R. RITTER
Notary Public, State of Illinois
My Commission Expires 07/18/06





15



THIS INSTRUMENT MERGED
IN A DECREE OF FORECLOSURE
ENTERED IN CASE NO. 06CH557
IN THE CIRCUIT COURT OF KANE
COUNTY, ILLINOIS THE 13th
DAY OF October 2006

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 29th day of April , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

301 ALDRIN AVE, BATAVIA, IL 60510
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   7.150 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of June, 2008  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials

Loan Number 

610-1 (Rev 1/01)                        Page 1 of 3

04/29/2005 8:54:45 AM



**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding four percentage points ( 4.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.150% or less than 7.150%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One( 1.000 %)** from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than **13.150)% or less than 7.150)%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan Numb           Initials _____

04/29/2005 8:54:45 AM



If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
Borrower SCOTT A SCHARLOW                Borrower JANET A SCHARLOW


_____ (Seal)        _____ (Seal)
Borrower                                 Borrower


Loan Number  Redacted

610-3 (Rev 1/01)                    Page 3 of 3

04/29/2005 8:54:45 AM



LOT 15 IN BLOCK 9 IN BRAEBURN UNIT THREE, BEING A SUBDIVISION OF PART
OF THE SOUTHWEST 18/4 OF SECTION 16, TOWNSHIP 39 NORTH, RANGE 8 EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED June 20, 1991 AS DOCUMENT
NUMBER 91-K-31962 IN BATAVIA TOWNSHIP, KANE COUNTY, ILLINOIS

CKA: 301 ALDRIN AVE., BATAVIA, ILLINOIS 60510



i9

**Redacted**

**2014K017169**

SANDY WEGMAN
RECORDER - KANE COUNTY, IL
RECORDED: 4/11/2014 11:38 AM
REC FEE: 34.00  RHSPS: 9.00
PAGES: 5

The State of Illinois

When recorded mail to
Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Loan Number **Redacted**

This form was prepared by: Argent Mortgage Company, **LLC**
Address: 1701 Golf Road  Rolling Meadows, IL 60008
Tel. No.: (888)311-4721

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
One City Boulevard West, Orange, CA 92868

**\*\*See Attached\*\***

does hereby grant, sell assign, transfer and convey, unto the

(herein "Assignee") whose address is

a certain Mortgage dated 04/29/05 , made and executed by
**SCOTT A SCHARLOW and JANET A SCHARLOW, As Joint Tenants**

to and in favor of Argent Mortgage Company, LLC
upon the following described property situated in KANE County, State of Illinois.

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"

Such Mortgage having been given to secure payment of **two hundred sixty-three thousand five
hundred and 00/100 ($ 263,500.00) which Mortgage is of record in Book** , **Volume**
, **or Liber No.**2005K068308**at page** 19 **(or as No.** 19 **) of the COUNTY Records of KANE
County, State of Illinois, together with the note(s) and obligations therein described and the
money due and to become due thereon with interest, and all rights accrued or to accrue under
such Mortgage. TO HAVE AND TO HOLD the same unto Assignee its successors and assigns,
forever, subject only to the terms and conditions of the above-described Mortgage.**

**Redacted**

7504-2 (Rev 06/04)

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 05/04/2005.


Argent Mortgage Company, LLC
(Assignor)

By: _____
    Shandrika Anderson  -  AGENT


[Space Below is Reserved for Acknowledgment Information]

State of Illinois

County of  Cook                    } ss.


On 05/04/2005  before me,  Brenda Marie Copeland
personally appeared  Shandrika Anderson
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which is the person(s) acted,  executed the instrument.



                                        WITNESS my hand and official seal.

                                        _____
                                        Brenda Marie Copeland

        OFFICIAL SEAL
    BRENDA MARIE COPELAND
NOTARY PUBLIC, STATE OF ILLINOIS       Loan Number  Redacted
  My Commission Expires 8/21/2007

750-IL3 (Rev 08/04)

# Attachment

Wells Fargo Bank, N.A., as Trustee, for the certificate holders of Asset-Backed
Pass-Through Certificates, Series 2005-WCW1 c/o Select Portfolio Servicing 3815
South West Temple Salt Lake City, UT 84115



BORROWER NAME: SCHARLOW

LOAN NUMBER **Redacted**

**LEGAL DESCRIPTION**

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:



04/26/2005 11:00 FAX  773 282 1404          HAMMER FINANCIAL CORP.                          ☑005/006
04/18/2005 16:47 FAX  630 954 4083          TRISTAR TITLE LLC          + HAMMER FINANCIAL ☑006/006

Ticor Title Insurance Company

Redacted

Commitment Number

## SCHEDULE C
## PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

LOT 15 IN BLOCK 9 IN BRAEBURN UNIT THREE, BEING A SUBDIVISION OF PART
OF THE SOUTHWEST 1/4 OF SECTION 16, TOWNSHIP 39 NORTH, RANGE 8 EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED June 20, 1991 AS DOCUMENT
NUMBER 91-K-31962 IN BATAVIA TOWNSHIP, KANE COUNTY, ILLINOIS

CKA: 301 ALDRIN AVE., BATAVIA, ILLINOIS 60510

ALTA Commitment
Schedule C

Redacted

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

Exhibit B

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

April 29, 2005
Date

Rolling Meadows
City

THIS INSTRUMENT MERGED IN A DECREE OF FORECLOSURE ENTERED IN CASE NO. IN THE CIRCUIT COURT OF KANE COUNTY, ILLINOIS

301 ALDRIN AVE, BATAVIA, IL 60510
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 263,500.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  **Argent Mortgage Company, LLC.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.150 %.** This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   **July 1, 2005** .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, **June 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at:    **505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$ 1,779.70**.  This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of, **June, 2008**  and on that day every  sixth  month thereafter.  Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  **four** percentage point(s) (**4.000%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.



Initials: _____

04/29/2005 8:54:45 AM

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.150** % or less than **7.150%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.150** % or less than **7.150 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder.

The amount of the charge will be **5.000** % of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials: SS CH
04/29/2005 8:54:45 AM

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
Borrower  SCOTT A SCHARLOW      Borrower  JANET A SCHARLOW

PAY TO THE ORDER OF

WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC
BY _____ (Seal)               _____ (Seal)
            Borrower
BY _____

Borrower

**Redacted**

**Redacted**

Exhibit C

**HOME AFFORDABLE MODIFICATION AGREEMENT**
**(Step Two of Two-Step Documentation Process)**

DIGIMAIL
MAY 2 5 2016

Borrower ("I"):1   **SCOTT A SCHARLOW , JANET A SCHARLOW**
Lender or Servicer ("Lender"): **Select Portfolio Servicing, Inc.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **April 29, 2005**
RedactedRedacted
Property Address [and Legal Description if recordation is necessary] ("Property"):
**301 ALDRIN AVE**
**BATAVIA, IL 60510**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

RedactedAgreement.
Redacted
Redacted

---

1. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I."  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

RedactedRedactedRedacted

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **June 1, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **June 1, 2016**.

A. The Maturity Date will be: **July 1, 2035.**

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$542,206.41** (the "New Principal Balance"). The New Principal Balance will consist of two (2) parts: (i) an amount which will accrue interest at the Note rate shown below, and on my monthly statement as Interest Bearing Principal Balance and (ii) an amount which will not accrue interest, shown below, and on my monthly statement as Deferred Principal Balance.

C. **$165,260.51** of the New Principal Balance shall be deferred (the Deferred Principal Balance) and I will not pay interest or make monthly payments on this amount. The new Principal Balance less the Deferred Principal Balance shall be referred to as the Interest Bearing Principal Balance and this amount is **$376,945.90**. Interest at the rate of **3.250%** will begin to accrue on the Interest Bearing Principal Balance as of **May 1, 2016** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **June 1, 2016.** My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------------------------------|------------------------|-------------------|----------------------------|
| 1-20  | 3.250%        | 05/01/2016                | $1,404.28                                     | $962.70, may adjust periodically          | $2,366.98, may adjust periodically | 06/01/2016 | 230 |

**A final balloon payment on the Interest Bearing Principal Balance of $254,812.06 is due on the Maturity Date.**

The Deferred Principal Balance of **$165,260.51** will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

UR016



F.   I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owned under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.   If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.





The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

Redacted

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, 888-679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**BALLOON NOTICE.** In order to reach an affordable payment, we extended your amortization term, which is the rate or speed by which your mortgage is calculated to be paid off; however, your maturity term, which is the period of time until your mortgage becomes due and payable, could not be fully extended to an equal term. This is because the investor on your account allows us to change your amortization term but does not allow us to change the maturity term to match. As a result of the difference between these two periods, there will be an amount due $254,812.06 on the date your lien matures on July 1, 2035. The amount due at maturity is in addition to your monthly scheduled payment and the principal forbearance of $165,260.51 that you received as part of your modification.

Redacted
Redacted
Redacted

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac

Deferred Principal Balance



In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
SCOTT A SCHARLOW

**Select Portfolio Servicing, Inc.**

_____5/16/16_____ Date

By: __Saray Alburges__
      Document Control Officer

_____ (Seal)
JANET A SCHARLOW

_____JUN 1 0 2016_____ Date

_____5/16/16_____ Date

_____[Space Below This Line For Acknowledgement]_____

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

Redacted



## DEFERRAL AGREEMENT

THIS DEFERRAL AGREEMENT ("Agreement") is entered into as of  March 6, 2017. Between Select Portfolio Servicing, Inc., on behalf of the lienholder ("Lender") and   SCOTT A SCHARLOW and JANET A SCHARLOW (Customer)

### Summary of Terms

**Account Number:**  Redacted
**Origination Date:**  April 29, 2005
**Maturity Date:**  July 1, 2035

**Current Principal Balance:** $539,890.48
**Pre Agreement Due Date:**  December 1, 2016
**Post Agreement Due Date:** May 1, 2017

**Property Address:**   301 ALDRIN AVE BATAVIA, IL 60510

**Deferred Amount**: Past due mortgage payments for the month(s) of December 2016 through April 2017 which total $7,021.40 and will be due upon maturity of the loan and added to the last payment due. This amount does not include any scheduled monthly escrow payment(s). Unpaid monthly escrow payment(s) may result in an escrow shortage.

This Agreement is made to cure the Borrower's failure to pay on time, the monthly payments described above that are past due under the Note and Security Agreement (the "Deferred Amount").  Borrower and Lender agree that the Deferred Amount will now be due and payable at the Maturity Date of the Note.  Upon execution and delivery of this Agreement, Borrower's payment obligation under this note will be current to the Post Agreement Due Date listed above.  Additional interest will not be charged on the Deferred Amount and no fee will be charged for this Agreement. Borrower ratifies and reaffirms their agreement to pay the remaining unpaid Principal Balance which includes the Deferred Amount and all amounts due under the Note and this Deferral Agreement in accordance with their terms.

Customer agrees that this Agreement will not extend or change in any way the amount of any credit insurance policies or optional insurance products which were purchased at the time the account was originated or otherwise in connection with the account.  Customer further agrees that any outstanding fees or advances owing on the account are not included in the Deferred Amount and that those amounts are still due and owing.

**NOTICE TO BORROWER: BY SIGNING THIS AGREEMENT YOU ACKNOWLEDGE AN OBLIGATION TO PAY AN INCREASED AMOUNT AT MATURITY. YOU MUST REPAY THE DEFERRED AMOUNT AND OTHER AMOUNTS, INCLUSIVE OF THE EXISTING NON-INTEREST BALANCE, YOU OWE UNDER THE NOTE AT THE TIME OF MATURITY OR UPON PAYMENT IN FULL. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. IF YOU DO NOT HAVE THE FUNDS TO PAY THE AMOUNT AT MATURITY, YOU MAY BE REQUIRED TO MAKE A PAYMENT OUT OF OTHER ASSETS YOU MAY OWN OR YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES, AND EXPENSES FOR ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE FINAL PAYMENT AT MATURITY, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE.**

IN WITNESS WHEREOF, the Borrowers and Lenders have executed this Deferral Agreement to be effective as of the Agreement Date. Borrowers acknowledge receipt of a copy of this Deferral Agreement.

_Scott Scharlow 3/12/17_
SCOTT A SCHARLOW             (Date)

SELECT PORTFOLIO SERVICING, Inc. ("Lender")

By:_____
Its:_____

_Janet Scharlow 3/13/17_
JANET A SCHARLOW(Date)

Redacted

**PlnDue, DebtEd, FeeDueINST, DISMISSED, CLOSED**

<div style="border:1px solid red; display:inline-block; color:red;">Exhibit D</div>

# U.S. Bankruptcy Court
## Northern District of Illinois (Eastern Division)
### Bankruptcy Petition #: 07-02971

|  |  |
|---|---|
| | *Date filed:* 02/21/2007 |
| *Assigned to:* Honorable Judge Manuel Barbosa | *Date terminated:* 06/27/2007 |
| Chapter 13 | *Date dismissed:* 03/29/2007 |
| Voluntary | *341 meeting:* 03/21/2007 |
| Asset | |

**Debtor 1**
**Scott Andrew Scharlow**                                            represented by **Scott Andrew Scharlow**
301 Aldrin Ave                                                                          PRO SE
Batavia, IL 60510
KANE-IL
SSN / ITIN: xxx-xx-2590

**Assist. U.S. Trustee**
**Dean C Harvalis**
Office of the United States Trustee
219 South Dearborn Street
Room 873
Chicago, IL 60604
312-885-5783

**Trustee**
**Glenn B Stearns**                                                    represented by **Carolyn A Suzzi**
801 Warrenville Road                                                                  Glenn Stearns Ch. 13 Trustee
Suite 650                                                                             801 Warrenville Road
Lisle, IL 60532                                                                       Suite 650
630-981-3888                                                                          Lisle, IL 60532
                                                                                      (630) 981-3888 Ext. 224
                                                                                      Email: suzzi_c@lisle13.com

**U.S. Trustee**
**William T Neary**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312-886-5785

| Filing Date | # | Docket Text |
|---|---|---|
| 02/21/2007 | 1<br>(4 pgs) | Chapter 13 Voluntary Petition Fee Amount $0.00, Filed by Scott Andrew Scharlow Government Proof |

| | | |
|---|---|---|
| | | of Claim due by 8/20/2007. Chapter 13 Plan due by 3/8/2007. (Clarke, Jody) (Entered: 02/21/2007) |
| 02/21/2007 | 2 | First Meeting of Creditors with 341(a) meeting to be held on 03/21/2007 at 01:00 PM at DuPage Bar Association, 126 S County Farm Road, Wheaton, Illinois 60187. Confirmation hearing to be held on 04/12/2007 at 11:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 140, Geneva, Illinois 60134. Proof of Claim due by 06/19/2007. Objection to Dischargeability due by 05/21/2007. (Clarke, Jody) (Entered: 02/21/2007) |
| 02/21/2007 | 3 | Statement of Social Security Number(s) Filed by Scott Andrew Scharlow . (Clarke, Jody) (Entered: 02/21/2007) |
| 02/21/2007 | 4 (1 pg) | Certificate of Credit Counseling Filed by Scott Andrew Scharlow . (Clarke, Jody) (Entered: 02/21/2007) |
| 02/21/2007 | 5 (2 pgs; 2 docs) | Application and Order To Pay Filing Fees In Installments . Final Installment Payment due by 6/21/2007. Signed on 2/21/2007 (Attachments: 1 Proposed Order) (Clarke, Jody) (Entered: 02/21/2007) |
| 02/23/2007 | 6 (2 pgs) | Request for Chapter 13 341 Meeting of Creditors . (Iwinski, Allen) (Entered: 02/23/2007) |
| 02/23/2007 | 7 (5 pgs) | BNC Certificate of Service - Meeting of Creditors. (RE: 6 Request for Chapter 13 341 Meeting of Creditors). No. of Notices: 3. Service Date 02/25/2007. (Admin.) (Entered: 02/25/2007) |
| 03/20/2007 | 8 (3 pgs; 2 docs) | Notice of Motion and Motion to Dismiss Case Filed by Carolyn A Suzzi on behalf of Glenn B Stearns. Hearing scheduled for 3/29/2007 at 11:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 140, Geneva, Illinois 60134. (Attachments: 1 Proposed Order) (Suzzi, Carolyn) (Entered: 03/20/2007) |
| 03/29/2007 | 9 (2 pgs; 2 docs) | Order Granting Motion to Dismiss Case (Related Doc # 8). Signed on 3/29/2007. (Williams, Daphne) (Entered: 04/03/2007) |
| 04/03/2007 | 10 (2 pgs) | BNC Certificate of Service - Notice of Dismissal (RE: 9 Order on Motion to Dismiss Case). No. of Notices: |

| | | |
|---|---|---|
| | | 4. Service Date 04/05/2007. (Admin.) (Entered: 04/05/2007) |
| 06/27/2007 | <u>11</u><br>(2 pgs) | Chapter 13 Final Report and Account (Stearns, Glenn) (Entered: 06/27/2007) |
| 06/27/2007 | 12 | Bankruptcy Case Closed and Trustee Discharged . (Williams, Daphne) (Entered: 06/27/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/22/2019 09:55:22 | | | |
| **PACER Login:** | mdk06521:2690224:5330324 | **Client Code:** | bk-EJS |
| **Description:** | Docket Report | **Search Criteria:** | 07-02971 Fil or Ent: filed From: 1/1/2007 To: 8/22/2019 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**CLOSED, DebtEd, DISMISSED, DismPayment**

# U.S. Bankruptcy Court
## Northern District of Illinois (Eastern Division)
### Bankruptcy Petition #: 14-01270

Exhibit E

|  | |
|---|---|
| | *Date filed:* 01/16/2014 |
| *Assigned to:* Honorable Judge Donald R. Cassling | *Date terminated:* 08/06/2014 |
| Chapter 13 | *Debtor dismissed:* 05/30/2014 |
| Voluntary | *341 meeting:* 02/12/2014 |
| Asset | |

*Debtor disposition:* Dismissed for failure to make
plan payments

| | |
|---|---|
| ***Debtor 1*** | represented by **Bradley S Covey** |
| **Scott A Scharlow** | Law Offices of Bradley S. Covey, |
| 301 Aldrin Ave. | P.C. |
| Batavia, IL 60510 | 428 S Batavia Ave |
| KANE-IL | Batavia, IL 60510 |
| SSN / ITIN: xxx-xx-2590 | 630 879-9559 |
| | Fax : 630 879-9394 |
| | Email: bradley.covey@gmail.com |

***Trustee***
**Glenn B Stearns**
801 Warrenville Road
Suite 650
Lisle, IL 60532
630-981-3888

***U.S. Trustee***
**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312-886-5785

| Filing Date | # | Docket Text |
|---|---|---|
| 01/16/2014 | 1<br>(43 pgs) | Chapter 13 Voluntary Petition Fee Amount $281, Filed by Bradley S Covey on behalf of Scott A Scharlow Government Proof of Claim due by 07/15/2014.Chapter 13 Plan due by 01/30/2014. (Covey, Bradley) (Entered: 01/16/2014) |

| 01/16/2014 | 2<br>(5 pgs) | Chapter 13 Plan Filed by Bradley S Covey on behalf of Scott A Scharlow. (Covey, Bradley) (Entered: 01/16/2014) |
|---|---|---|
| 01/16/2014 | 3<br>(9 pgs) | Chapter 13 Statement of Current Monthly and Disposable Income Filed by Bradley S Covey on behalf of Scott A Scharlow. (Covey, Bradley) (Entered: 01/16/2014) |
| 01/16/2014 | 4 | Statement of Social Security Number(s) Filed by Bradley S Covey on behalf of Scott A Scharlow. (Covey, Bradley) (Entered: 01/16/2014) |
| 01/16/2014 | 5 | Receipt of Voluntary Petition (Chapter 13)(14-01270) [misc,volp13a] ( 281.00) Filing Fee. Receipt number 25447516. Fee Amount $ 281.00 (re:Doc# 1) (U.S. Treasury) (Entered: 01/16/2014) |
| 01/16/2014 | 6 | Meeting of Creditors with 341(a) meeting to be held on 02/12/2014 at 12:30 PM at 801 Warrenville Road Ste 655, Lisle, IL 60532-3614. Confirmation hearing to be held on 03/14/2014 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. Proof of Claim due by 05/13/2014. Objection to Dischargeability due by 04/14/2014. (Covey, Bradley) (Entered: 01/16/2014) |
| 01/16/2014 | 7<br>(1 pg) | Certificate of Credit Counseling Filed by Bradley S Covey on behalf of Scott A Scharlow. (Covey, Bradley) (Entered: 01/16/2014) |
| 01/16/2014 | 8<br>(1 pg) | Declaration Re: Electronic Filing of Petition and Accompanying Documents. Filed by Bradley S Covey on behalf of Scott A Scharlow. (Covey, Bradley) (Entered: 01/16/2014) |
| 01/17/2014 | 9<br>(2 pgs) | Chapter 13 341 Meeting of Creditors . (Armstead, Cynthia) (Entered: 01/17/2014) |
| 01/17/2014 | 10<br>(3 pgs) | BNC Certificate of Notice - Meeting of Creditors. (RE: 9 Chapter 13 341 Meeting of Creditors). No. of Notices: 5. Notice Date 01/19/2014. (Admin.) (Entered: 01/19/2014) |
| 01/17/2014 | 11<br>(6 pgs) | BNC Certificate of Notice - PDF Document. (RE: 2 Chapter 13 Plan/Modified Plan). No. of Notices: 4. Notice Date 01/19/2014. (Admin.) (Entered: 01/19/2014) |

| | | |
|---|---|---|
| 01/23/2014 | 12<br>(1 pg) | Request for Service of Notices Filed by Exeter Finance Corp.. (Garza, Marian) (Entered: 01/23/2014) |
| 01/26/2014 | 13<br>(1 pg) | Request for Service of Notices Filed by Recovery Management Systems Corporation. (Singh, Ramesh) (Entered: 01/26/2014) |
| 01/31/2014 | 14<br>(1 pg) | Order Case Reassigned. Judge Donald R. Cassling added to case. Involvement of Judge Carol A. Doyle terminated. Signed on 12/17/2013 (ilnbadi) (Entered: 01/31/2014) |
| 02/13/2014 | 15 | Meeting of Creditors Held (AMD PLAN) Debtor appeared. (Stearns, Glenn) (Entered: 02/13/2014) |
| 02/13/2014 | 16<br>(10 pgs; 4 docs) | Notice of Motion and Application for Compensation for Bradley S Covey, Debtor's Attorney, Fee: $4000.00, Expenses: $281.00. Filed by Bradley S Covey. Hearing scheduled for 3/14/2014 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order # 2 Exhibit rights and responsibilities agreement between chapter 13 debtors and their attorneys # 3 Exhibit notice of commencement of case) (Covey, Bradley) (Entered: 02/13/2014) |
| 03/14/2014 | 17 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 04/11/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 03/14/2014. (Garga, Paulina) (Entered: 03/14/2014) |
| 03/14/2014 | 18 | (E)Hearing Continued (RE: 16 Compensation WITH Notice of Motion). hearing scheduled for 04/11/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 03/14/2014. (Garga, Paulina) (Entered: 03/14/2014) |
| 03/31/2014 | 19<br>(2 pgs; 2 docs) | Notice of Motion and Motion to Dismiss for Unreasonable Delay for Debtor., Notice of Motion and Motion to Dismiss for Failure to Make Plan Payments for Debtor. Filed by Glenn B Stearns Hearing scheduled for 4/11/2014 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, |

| | | |
|---|---|---|
| | | Geneva, Illinois 60134. (Attachments: # 1 Proposed Order) (Stearns, Glenn) (Entered: 03/31/2014) |
| 04/10/2014 | 20 (5 pgs) | Modified Chapter 13 Plan Filed by Bradley S Covey on behalf of Scott A Scharlow. (Covey, Bradley) (Entered: 04/10/2014) |
| 04/10/2014 | 21 (4 pgs) | Amended Schedule(s) :D,E,F Fee Amount $30. Filed by Bradley S Covey on behalf of Scott A Scharlow. (Covey, Bradley) (Entered: 04/10/2014) |
| 04/10/2014 | 22 | Receipt of Amended Schedules (Fee)(14-01270) [misc,amdschdf] ( 30.00) Filing Fee. Receipt number 26150518. Fee Amount $ 30.00 (re:Doc# 21) (U.S. Treasury) (Entered: 04/10/2014) |
| 04/10/2014 | 23 (1 pg) | Declaration Re: Electronic Filing for Documents Filed After Petition. Filed by Bradley S Covey on behalf of Scott A Scharlow (RE: 21 Amended Schedules (Fee)). (Covey, Bradley) (Entered: 04/10/2014) |
| 04/11/2014 | 24 (6 pgs) | BNC Certificate of Notice - PDF Document. (RE: 20 Chapter 13 Plan/Modified Plan). No. of Notices: 6. Notice Date 04/13/2014. (Admin.) (Entered: 04/13/2014) |
| 04/11/2014 | 25 | (E)Hearing Continued (RE: 19 Dismiss Case for Other Reasons). hearing scheduled for 04/25/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 04/11/2014. (Smith, Lester) (Entered: 04/14/2014) |
| 04/11/2014 | 26 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 04/25/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 04/11/2014. (Smith, Lester) (Entered: 04/14/2014) |
| 04/11/2014 | 27 | (E)Hearing Continued (RE: 16 Compensation WITH Notice of Motion). hearing scheduled for 04/25/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 04/11/2014. (Smith, Lester) (Entered: 04/14/2014) |
| 04/25/2014 | 28 | (E)Hearing Continued (RE: 19 Dismiss Case for Other Reasons). hearing scheduled for 05/02/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, |

| | | |
|---|---|---|
| | | Geneva, IL, 60134.. Signed on 04/25/2014. (Smith, Lester) (Entered: 04/29/2014) |
| 04/25/2014 | 29 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 05/02/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 04/25/2014. (Smith, Lester) (Entered: 04/29/2014) |
| 04/25/2014 | 30 | (E)Hearing Continued (RE: 16 Compensation WITH Notice of Motion). hearing scheduled for 05/02/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 04/25/2014. (Smith, Lester) (Entered: 04/29/2014) |
| 05/02/2014 | 31 | (E)Hearing Continued (RE: 19 Dismiss Case for Other Reasons). hearing scheduled for 05/30/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 05/02/2014. (Askew, Althea) (Entered: 05/05/2014) |
| 05/02/2014 | 32 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 05/30/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 05/02/2014. (Askew, Althea) (Entered: 05/05/2014) |
| 05/02/2014 | 33 | (E)Hearing Continued (RE: 16 Compensation WITH Notice of Motion). hearing scheduled for 05/30/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 05/02/2014. (Askew, Althea) (Entered: 05/05/2014) |
| 05/14/2014 | 34 (4 pgs; 2 docs) | Objection to Confirmation of Plan Filed by Dana N O'Brien on behalf of Select Portfolio Servicing, Inc. (RE: 20 Chapter 13 Plan/Modified Plan). (Attachments: # 1 Proposed Order)(O'Brien, Dana) (Entered: 05/14/2014) |
| 05/14/2014 | 35 (2 pgs) | Notice of Filing Filed by Dana N O'Brien on behalf of Select Portfolio Servicing, Inc. (RE: 34 Objection to Confirmation of the Plan). (O'Brien, Dana) (Entered: 05/14/2014) |
| 05/14/2014 | 36 (6 pgs; 2 docs) | Notice of Motion and Motion to Allow Costs of Collection Filed by Dana N O'Brien on behalf of Select Portfolio Servicing, Inc.. Hearing scheduled for 5/30/2014 at 10:00 AM at Kane Courthouse, 100 |

| | | |
|---|---|---|
| | | S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order) (O'Brien, Dana) (Entered: 05/14/2014) |
| 05/30/2014 | 37 (1 pg) | (E)Order Granting Motion To Allow Costs of Collection (Related Doc # 36 ). Signed on 05/30/2014. (Askew, Althea) (Entered: 05/30/2014) |
| 05/30/2014 | 38 (2 pgs; 2 docs) | Order Granting Trustee's Motion To Dismiss for Debtor. (Related Doc # 19), Granting Motion to Dismiss for Failure to Make Plan Payments for Debtor. (Related Doc # 19). Signed on 5/30/2014. (Rodarte, Aida) (Entered: 06/02/2014) |
| 05/30/2014 | 39 (1 pg) | Order Granting Application For Compensation (Related Doc # 16). Bradley S Covey, fees awarded: $4000.00, expenses awarded: $281.00. Signed on 5/30/2014. (Rodarte, Aida) (Entered: 06/02/2014) |
| 06/02/2014 | 40 (2 pgs) | BNC Certificate of Notice - Notice of Dismissal (RE: 38 Order on Trustee's Motion to Dismiss). No. of Notices: 8. Notice Date 06/04/2014. (Admin.) (Entered: 06/04/2014) |
| 08/05/2014 | 41 (3 pgs) | Chapter 13 Final Report and Account (Stearns, Glenn) (Entered: 08/05/2014) |
| 08/06/2014 | 42 | Bankruptcy Case Closed and Trustee Discharged . (Epps, Wanda) (Entered: 08/06/2014) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/22/2019 09:56:13 | | | |
| PACER Login: | mdk06521:2690224:5330324 | Client Code: | bk-EJS |
| Description: | Docket Report | Search Criteria: | 14-01270 Fil or Ent: filed From: 1/1/2014 To: 8/22/2019 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts |

| | | | for documents: included |
|---|---|---|---|
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**DebtEd, DismPayment, CLOSED**

# U.S. Bankruptcy Court
## Northern District of Illinois (Eastern Division)
### Bankruptcy Petition #: 14-28635

<div style="float:left;border:1px solid red;">Exhibit F</div>

| | |
|---|---|
| | *Date filed:* 08/05/2014 |
| *Assigned to:* Honorable Judge Donald R Cassling | *Date terminated:* 03/12/2015 |
| Chapter 13 | *Debtor dismissed:* 01/09/2015 |
| Voluntary | *Plan confirmed:* 10/24/2014 |
| Asset | *341 meeting:* 10/08/2014 |

*Debtor disposition:* Dismissed for failure to make
plan payments

***Debtor 1***                                             represented by **Michael Oreluk**
**Scott A Scharlow**                                        Schaller Law Firm P.C.
301 Aldrin Avenue                                           700 Commerce Drive, Suite
Batavia, IL 60510                                           500
KANE-IL                                                     Oak Brook, IL 60523
SSN / ITIN: xxx-xx-2590                                     (630) - 6551233
                                                            Email: slfecfmail@gmail.com

***Trustee***
**Glenn B Stearns**
801 Warrenville Road
Suite 650
Lisle, IL 60532
630-981-3888

***U.S. Trustee***
**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312-886-5785

| Filing Date | # | Docket Text |
|---|---|---|
| 08/05/2014 | 1<br>(16 pgs) | Chapter 13 Voluntary Petition Fee Amount $310, Filed by Michael Oreluk on behalf of Scott A Scharlow Government Proof of Claim due by 02/2/2015.Chapter 13 Plan due by 08/19/2014. (Oreluk, Michael) (Entered: 08/05/2014) |

| 08/05/2014 | 2<br>(1 pg) | Declaration Re: Electronic Filing of Petition and Accompanying Documents. Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/05/2014) |
| --- | --- | --- |
| 08/05/2014 | 3 | Statement of Social Security Number(s) Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/05/2014) |
| 08/05/2014 | 4<br>(1 pg) | Certificate of Credit Counseling Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/05/2014) |
| 08/05/2014 | 5 | Receipt of Voluntary Petition (Chapter 13)(14-28635) [misc,volp13a] ( 310.00) Filing Fee. Receipt number 27108833. Fee Amount $ 310.00 (re:Doc# 1) (U.S. Treasury) (Entered: 08/05/2014) |
| 08/05/2014 | 6 | Meeting of Creditors with 341(a) meeting to be held on 08/27/2014 at 09:00 AM at 801 Warrenville Road Ste 655, Lisle, IL 60532-3614. Confirmation hearing to be held on 09/26/2014 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. Proof of Claim due by 11/25/2014. Objection to Dischargeability due by 10/27/2014. (Oreluk, Michael) (Entered: 08/05/2014) |
| 08/06/2014 | 7<br>(2 pgs) | Chapter 13 341 Meeting of Creditors . (Miller, Marvin) (Entered: 08/06/2014) |
| 08/06/2014 | 8<br>(4 pgs) | BNC Certificate of Notice - Meeting of Creditors. (RE: 7 Chapter 13 341 Meeting of Creditors). No. of Notices: 17. Notice Date 08/08/2014. (Admin.) (Entered: 08/08/2014) |
| 08/19/2014 | 9<br>(6 pgs; 2 docs) | Notice of Motion and Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Michael Oreluk on behalf of Scott A Scharlow. Hearing scheduled for 8/29/2014 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order) (Oreluk, Michael) (Entered: 08/19/2014) |
| 08/20/2014 | 10<br>(35 pgs; 6 docs) | Notice of Motion and Motion for Relief from Stay as to 301 Aldrin Avenue, Batavia, IL 60510. Fee Amount $176, Filed by Toni Dillon on behalf of |

| | | |
|---|---|---|
| | | Select Portfolio Servicing, Inc., as servicing agent for Wells Fargo Bank, N.A., for the certificate holders of Asset-Backed Pass-Through Certificates, Series 2005-WCW1. Hearing scheduled for 8/29/2014 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Statement Accompanying Relief From Stay # 2 Proposed Order # 3 Mortgage # 4 Note # 5 Assignment) (Dillon, Toni) (Entered: 08/20/2014) |
| 08/20/2014 | 11 | Receipt of Motion for Relief from Stay(14-28635) [motion,mrlfsty] ( 176.00) Filing Fee. Receipt number 27231326. Fee Amount $ 176.00 (re:Doc# 10) (U.S. Treasury) (Entered: 08/20/2014) |
| 08/22/2014 | 12 (5 pgs) | Chapter 13 Plan Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/22/2014) |
| 08/22/2014 | 13 (2 pgs) | Summary of Schedules with Statistical Summary Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/22/2014) |
| 08/22/2014 | 14 (21 pgs) | Schedules A,B,C,D,E,F,G,H,I,J Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/22/2014) |
| 08/22/2014 | 15 (7 pgs) | Chapter 13 Statement of Current Monthly and Disposable Income Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/22/2014) |
| 08/22/2014 | 16 (18 pgs; 5 docs) | Notice of Motion and Motion to Extend Automatic Stay Filed by Michael Oreluk on behalf of Scott A Scharlow. Hearing scheduled for 8/29/2014 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Affidavit # 4 Proposed Order) (Oreluk, Michael) (Entered: 08/22/2014) |
| 08/22/2014 | 17 (9 pgs) | Statement of Financial Affairs Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 08/22/2014) |
| 08/22/2014 | 18 (9 pgs; 3 docs) | Notice of Motion and Amended Motion (related document(s): 10 Motion for Relief from Stay), |

| | | |
|---|---|---|
| | | Notice of Motion and Motion for Relief from Co-Debtor Stay as to 301 Aldrin Avenue, Batavia, IL 60510. Filed by Toni Dillon on behalf of Select Portfolio Servicing, Inc., as servicing agent for Wells Fargo Bank, N.A., for the certificate holders of Asset-Backed Pass-Through Certificates, Series 2005-WCW1. Hearing scheduled for 8/29/2014 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order # 2 Statement Accompanying Relief From Stay) (Dillon, Toni) (Entered: 08/22/2014) |
| 08/25/2014 | 20 (7 pgs) | BNC Certificate of Notice - PDF Document. (RE: 12 Chapter 13 Plan/Modified Plan). No. of Notices: 24. Notice Date 08/27/2014. (Admin.) (Entered: 08/27/2014) |
| 08/27/2014 | 19 | Meeting of Creditors Not Held (MISSING TAXES, MISSING PAY ADVICES) Debtor absent. (Stearns, Glenn) (Entered: 08/27/2014) |
| 08/29/2014 | 21 | (E)Hearing Continued (RE: 18 Amended Motion). hearing scheduled for 09/12/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 08/29/2014. (Nelson, Freddie) (Entered: 08/29/2014) |
| 08/29/2014 | 22 (1 pg) | (E)Order Granting Motion To Extend Deadline to File Schedules or Provide Required Information (Related Doc # 9 ). Signed on 08/29/2014. (Burton, Shenitha) (Entered: 09/01/2014) |
| 08/29/2014 | 23 (1 pg) | Order Denying Motion to Extend Automatic Stay (Related Doc # 16. Signed on 8/29/2014. (Myers, Melissa) (Entered: 09/02/2014) |
| 09/05/2014 | 24 (18 pgs; 5 docs) | Notice of Motion and Motion to Impose Automatic Stay Filed by Michael Oreluk on behalf of Scott A Scharlow. Hearing scheduled for 9/12/2014 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Affidavit # 2 Exhibit # 3 Exhibit # 4 Proposed Order) (Oreluk, Michael) (Entered: 09/05/2014) |
| 09/05/2014 | 25 (11 pgs; 4 docs) | Notice of Motion and Application for Compensation for Michael Oreluk, Debtor's Attorney, Fee: $4000, |

Illinois Northern Bankruptcy Live System        Page 5 of 10
Case 19-22146   Doc 17-1   Filed 08/29/19   Entered 08/29/19 11:17:55   Desc Exhibit
Page 49 of 62

| | | |
|---|---|---|
| | | Expenses: $348. Filed by Michael Oreluk. Hearing scheduled for 9/26/2014 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Exhibit # 2 Proposed Order # 3 Court-Approved Retention Agreement) (Oreluk, Michael) (Entered: 09/05/2014) |
| 09/12/2014 | 26 | (E)Order Withdrawing Motion To Impose Automatic Stay (Related Doc # 24 ). Signed on 09/12/2014. (Burton, Shenitha) (Entered: 09/14/2014) |
| 09/12/2014 | 27 (2 pgs) | Order Granting Motion for Relief from Stay (Related Doc # 10), Granting Amended Motion (Related Doc # 18), Granting Motion for Relief from Co-Debtor Stay (Related Doc # 18). Signed on 9/12/2014. (Myers, Melissa) (Entered: 09/15/2014) |
| 09/18/2014 | 28 (2 pgs; 2 docs) | Notice of Motion and Motion to Dismiss for Unreasonable Delay for Debtor., Notice of Motion and Motion to Dismiss for Failure to Make Plan Payments for Debtor. Filed by Glenn B Stearns Hearing scheduled for 9/26/2014 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order) (Stearns, Glenn) (Entered: 09/18/2014) |
| 09/26/2014 | 29 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 10/03/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 09/26/2014. (Burton, Shenitha) (Entered: 09/28/2014) |
| 09/26/2014 | 30 | (E)Hearing Continued (RE: 28 Dismiss Case for Other Reasons). hearing scheduled for 10/03/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 09/26/2014. (Burton, Shenitha) (Entered: 09/28/2014) |
| 09/26/2014 | 31 | (E)Hearing Continued (RE: 25 Compensation WITH Notice of Motion). hearing scheduled for 10/03/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 09/26/2014. (Burton, Shenitha) (Entered: 09/28/2014) |
| 09/29/2014 | 32 (5 pgs) | Modified Chapter 13 Plan Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 09/29/2014) |

| | | |
|---|---|---|
| 09/30/2014 | 34<br>(7 pgs) | BNC Certificate of Notice - PDF Document. (RE: 32 Chapter 13 Plan/Modified Plan). No. of Notices: 24. Notice Date 10/02/2014. (Admin.) (Entered: 10/02/2014) |
| 10/02/2014 | 33 | Statement Adjourning Meeting of Creditors. Section 341(a) Meeting Continued on 10/8/2014 at 10:30 AM at 801 Warrenville Road Ste 655, Lisle, IL 60532-3614. (Stearns, Glenn) (Entered: 10/02/2014) |
| 10/03/2014 | 35 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 10/17/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 10/03/2014. (Burton, Shenitha) (Entered: 10/04/2014) |
| 10/03/2014 | 36 | (E)Hearing Continued (RE: 28 Dismiss Case for Other Reasons). hearing scheduled for 10/17/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 10/03/2014. (Burton, Shenitha) (Entered: 10/04/2014) |
| 10/03/2014 | 37 | (E)Hearing Continued (RE: 25 Compensation WITH Notice of Motion). hearing scheduled for 10/17/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 10/03/2014. (Burton, Shenitha) (Entered: 10/04/2014) |
| 10/08/2014 | 38 | Meeting of Creditors Held (AMD PLAN, B22C) Debtor appeared. (Stearns, Glenn) (Entered: 10/08/2014) |
| 10/13/2014 | 39<br>(5 pgs) | Modified Chapter 13 Plan Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 10/13/2014) |
| 10/13/2014 | 40<br>(9 pgs) | Amended Statement of Financial Affairs Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 10/13/2014) |
| 10/13/2014 | 41<br>(4 pgs) | Amended Schedule(s) : B,. Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 10/13/2014) |
| 10/13/2014 | 42<br>(7 pgs) | Amended Chapter 13 Statement of Current Monthly and Disposable Income Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 10/13/2014) |

| | | |
|---|---|---|
| 10/13/2014 | 43<br>(5 pgs) | Modified Chapter 13 Plan Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 10/13/2014) |
| 10/14/2014 | 45<br>(7 pgs) | BNC Certificate of Notice - PDF Document. (RE: 39 Chapter 13 Plan/Modified Plan). No. of Notices: 25. Notice Date 10/16/2014. (Admin.) (Entered: 10/16/2014) |
| 10/14/2014 | 46<br>(7 pgs) | BNC Certificate of Notice - PDF Document. (RE: 43 Chapter 13 Plan/Modified Plan). No. of Notices: 25. Notice Date 10/16/2014. (Admin.) (Entered: 10/16/2014) |
| 10/16/2014 | 44<br>(5 pgs) | Modified Chapter 13 Plan Filed by Michael Oreluk on behalf of Scott A Scharlow. (Oreluk, Michael) (Entered: 10/16/2014) |
| 10/17/2014 | 47 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 10/24/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 10/17/2014. (Nelson, Freddie) (Entered: 10/17/2014) |
| 10/17/2014 | 48 | (E)Hearing Continued (RE: 28 Dismiss Case for Other Reasons). hearing scheduled for 10/24/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 10/17/2014. (Nelson, Freddie) (Entered: 10/17/2014) |
| 10/17/2014 | 49 | (E)Hearing Continued (RE: 25 Compensation WITH Notice of Motion). hearing scheduled for 10/24/2014 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 10/17/2014. (Nelson, Freddie) (Entered: 10/17/2014) |
| 10/17/2014 | 50<br>(7 pgs) | BNC Certificate of Notice - PDF Document. (RE: 44 Chapter 13 Plan/Modified Plan). No. of Notices: 26. Notice Date 10/19/2014. (Admin.) (Entered: 10/19/2014) |
| 10/24/2014 | 51<br>(1 pg) | Order Confirming Chapter 13 Plan (RE: 44 Chapter 13 Plan/Modified Plan). Signed on 10/24/2014 (Myers, Melissa) (Entered: 10/27/2014) |
| 10/24/2014 | 52 | (E)Order Withdrawing Trustee's Motion To Dismiss . (Related Doc # 28), Withdrawing Motion |

| | | |
|---|---|---|
| | | to Dismiss for Failure to Make Plan Payments (Related Doc # 28). Signed on 10/24/2014. (Myers, Melissa) (Entered: 10/27/2014) |
| 10/24/2014 | 53 (1 pg) | Order Granting Application For Compensation (Related Doc # 25). Michael Oreluk, fees awarded: $4000.00, expenses awarded: $348.00. Signed on 10/24/2014. (Myers, Melissa) (Entered: 10/27/2014) |
| 11/24/2014 | 54 (11 pgs; 5 docs) | Notice of Motion and Motion for Relief from Stay as to 2013 Dodge Journey. Fee Amount $176, Filed by Cari A Kauffman on behalf of Santander Consumer USA Inc. d/b/a Chrysler Capital. Hearing scheduled for 12/5/2014 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Contract & Title # 2 Statement Accompanying Relief From Stay # 3 Payment History # 4 Proposed Order) (Kauffman, Cari) (Entered: 11/24/2014) |
| 11/24/2014 | 55 | Receipt of Motion for Relief from Stay(14-28635) [motion,mrlfsty] ( 176.00) Filing Fee. Receipt number 27965664. Fee Amount $ 176.00 (re:Doc# 54) (U.S. Treasury) (Entered: 11/24/2014) |
| 12/05/2014 | 56 (1 pg) | (E)Order Granting Motion for Relief from Stay (Related Doc # 54 ). Signed on 12/05/2014. (Burton, Shenitha) (Entered: 12/05/2014) |
| 12/12/2014 | 57 (12 pgs; 3 docs) | Notice of Motion and Motion to Vacate (related documents 56 Order on Motion for Relief from Stay) Filed by Michael Oreluk on behalf of Scott A Scharlow. Hearing scheduled for 12/19/2014 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order # 2 Exhibit) (Oreluk, Michael) (Entered: 12/12/2014) |
| 12/16/2014 | 58 (2 pgs; 2 docs) | Notice of Motion and Motion to Dismiss for Failure to Make Plan Payments for Debtor. Filed by Glenn B Stearns Hearing scheduled for 1/9/2015 at 9:15 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order) (Stearns, Glenn) (Entered: 12/16/2014) |
| 12/18/2014 | 59 (3 pgs; 2 docs) | Objection to (related document(s): 57 Motion to Vacate) Filed by Cari A Kauffman on behalf of |

| | | |
|---|---|---|
| | | Santander Consumer USA Inc. d/b/a Chrysler Capital (Attachments: # 1 Proposed Order) (Kauffman, Cari) (Entered: 12/18/2014) |
| 12/18/2014 | 60 (2 pgs) | Notice of Filing Filed by Cari A Kauffman on behalf of Santander Consumer USA Inc. d/b/a Chrysler Capital (RE: 59 Objection). (Kauffman, Cari) (Entered: 12/18/2014) |
| 12/19/2014 | 61 | (E)Hearing Continued (RE: 57 Vacate). hearing scheduled for 01/09/2015 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 12/19/2014. (Burton, Shenitha) (Entered: 12/19/2014) |
| 12/26/2014 | 62 (1 pg) | Change of Name/Address for Exeter Finance Corporation. Address changed to Payment Address Only Exeter Finance Corporation P.O. Box 167399 Irving, TX 75016 Filed by Exeter Finance Corp.. (Garza, Marian) (Entered: 12/26/2014) |
| 01/09/2015 | 63 (2 pgs; 2 docs) | (E)Order Granting Motion to Dismiss for Failure to Make Plan Payments for Debtor. (Related Doc # 58 ). Signed on 01/09/2015. (Burton, Shenitha) (Entered: 01/12/2015) |
| 01/09/2015 | 64 (1 pg) | Order Denying Motion To Vacate (Related Doc # 57). Signed on 1/9/2015. (Myers, Melissa) (Entered: 01/13/2015) |
| 01/13/2015 | 65 (3 pgs) | BNC Certificate of Notice - Notice of Dismissal (RE: 63 Order on Motion Dismiss for Failure to Make Plan Payments). No. of Notices: 21. Notice Date 01/15/2015. (Admin.) (Entered: 01/15/2015) |
| 03/11/2015 | 66 (3 pgs) | Chapter 13 Final Report and Account (Stearns, Glenn) (Entered: 03/11/2015) |
| 03/12/2015 | 67 | Bankruptcy Case Closed and Trustee Discharged . (Myers, Melissa) (Entered: 03/12/2015) |

**PACER Service Center**

**Transaction Receipt**

| 08/22/2019 09:56:55 | | | |
|---|---|---|---|
| **PACER Login:** | mdk06521:2690224:5330324 | **Client Code:** | bk-EJS |
| **Description:** | Docket Report | **Search Criteria:** | 14-28635 Fil or Ent: filed From: 1/1/2014 To: 8/22/2019 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**DebtEd**

# U.S. Bankruptcy Court
## Northern District of Illinois (Eastern Division)
### Bankruptcy Petition #: 18-30528

|  |  |
|---|---|
| *Assigned to:* Honorable Judge Janet S. Baer | *Date filed:* 10/30/2018 |
| Chapter 13 | *Plan confirmed:* 03/01/2019 |
| Voluntary | *341 meeting:* 12/05/2018 |
| Asset | *Deadline for filing claims:* 01/08/2019 |
|  | *Deadline for filing claims (govt.):* 04/29/2019 |

Exhibit G

| | |
|---|---|
| ***Debtor 1*** | represented by **Ashley Chike** |
| **Scott Andrew Scharlow** | Geraci Law L.L.C. |
| 301 Aldrin Ave | 55 E. Monroe St. Suite #3400 |
| Batavia, IL 60510 | Chicago, IL 60603 |
| KANE-IL | 312.332.1800 |
| SSN / ITIN: xxx-xx-2590 | Fax : 877.247.1960 |
| | Email: ndil@geracilaw.com |
| | |
| | **Alex Wilson** |
| | Geraci Law L.L.C. |
| | 55 E. Monroe St. Suite #3400 |
| | Chicago, IL 60603 |
| | 312.332.1800 |
| | Fax : 877.247.1960 |
| | Email: ndil@geracilaw.com |

***Trustee***
**Glenn B Stearns**
801 Warrenville Road Suite 650
Lisle, IL 60532
630-981-3888

***U.S. Trustee***
**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312-886-5785

| Filing Date | # | Docket Text |
|---|---|---|
| 10/30/2018 | 1<br>(65 pgs) | Chapter 13 Voluntary Petition for an Individual Fee Amount $310, Filed by Ashley Chike on behalf of |

| | | |
|---|---|---|
| | | Scott Andrew Scharlow Chapter 13 Plan due by 11/13/2018. (Chike, Ashley) (Entered: 10/30/2018) |
| 10/30/2018 | 2 | Meeting of Creditors with 341(a) meeting to be held on 12/05/2018 at 01:00 PM at 801 Warrenville Road Ste 655, Lisle, IL 60532-3614. Confirmation hearing to be held on 01/04/2019 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. Proof of Claim due by 01/08/2019. Government Proof of Claim due by 04/29/2019. Objection to Dischargeability due by 02/04/2019. (Chike, Ashley) (Entered: 10/30/2018) |
| 10/30/2018 | 3 | Receipt of Voluntary Petition (Chapter 13)(18-30528) [misc,volp13a] ( 310.00) Filing Fee. Receipt number 38399561. Fee Amount $ 310.00 (re:Doc# 1) (U.S. Treasury) (Entered: 10/30/2018) |
| 10/30/2018 | 4 | Statement About Your Social Security Numbers Filed by Ashley Chike on behalf of Scott Andrew Scharlow. (Chike, Ashley) (Entered: 10/30/2018) |
| 10/30/2018 | 5 (1 pg) | Certificate of Credit Counseling Filed by Ashley Chike on behalf of Scott Andrew Scharlow. (Chike, Ashley) (Entered: 10/30/2018) |
| 10/30/2018 | 6 (4 pgs) | Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 5 Years (Form 122C-1) Disposable Income Is Determined Filed by Ashley Chike on behalf of Scott Andrew Scharlow. (Chike, Ashley) (Entered: 10/30/2018) |
| 10/30/2018 | 7 (8 pgs) | Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Filed by Ashley Chike on behalf of Scott Andrew Scharlow. (Chike, Ashley) (Entered: 10/30/2018) |
| 10/30/2018 | 8 (6 pgs) | Chapter 13 Plan and (3) Request(s) for Valuation of Security Filed by Ashley Chike on behalf of Scott Andrew Scharlow. (Chike, Ashley) (Entered: 10/30/2018) |
| 10/31/2018 | 9 | Notice of Debtor's Prior Filings |

| Debtor | Case No | Note |
|---|---|---|
| | | |

| | | Scott Andrew Scharlow | 14-28635 | Ch13 filed in Illinois Northern Bankruptcy on 08/05/2014, Dismissed for failure to make plan payments on 01/09/2015 |
| | | | 14-01270 | Ch13 filed in Illinois Northern Bankruptcy on 01/16/2014, Dismissed for failure to make plan payments on 05/30/2014 |
| | | | 07-02971 | Ch13 filed in Illinois Northern Bankruptcy on 02/21/2007, Dismissed for Other Reason on 03/29/2007 |
| | | | 02-15010 | Ch13 filed in Illinois Northern Bankruptcy on 04/16/2002, Dismissed for Other Reason on 08/29/2002 |
| | | | 98-27806 | Ch13 filed in Illinois Northern Bankruptcy on 09/03/1998, Standard Discharge on 09/12/2001 |
| | | (Admin) (Entered: 10/31/2018) | | |
| 10/31/2018 | 10 (1 pg) | Proposed Order to Employer to Pay the Trustee Filed by Ashley Chike on behalf of Scott Andrew Scharlow. (Chike, Ashley) (Entered: 10/31/2018) | | |
| 10/31/2018 | 11 (2 pgs) | Notice of Chapter 13 Bankruptcy Case . (Collopy-Norris, Katherine) (Entered: 10/31/2018) | | |
| 10/31/2018 | 12 (1 pg) | Request for Service of Notices Filed by PRA Receivables Management, LLC. (Smith, Valerie) (Entered: 10/31/2018) | | |
| 11/01/2018 | 13 (1 pg) | Order to Employer to Pay the Trustee . Signed on 11/1/2018 (Shabez, Cindy) (Entered: 11/01/2018) | | |
| 11/02/2018 | 14 (4 pgs) | BNC Certificate of Notice - Meeting of Creditors. (RE: 11 Notice of Chapter 13 Bankruptcy Case). No. of Notices: 16. Notice Date 11/02/2018. (Admin.) (Entered: 11/02/2018) | | |
| 11/02/2018 | 15 (8 pgs) | BNC Certificate of Notice - PDF Document. (RE: 8 Chapter 13 Plan/Amended Plan). No. of Notices: 18. Notice Date 11/02/2018. (Admin.) (Entered: 11/02/2018) | | |
| 11/04/2018 | | | | |

| | 16<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Umair Malik on behalf of Wells Fargo Bank, N.A., as Trustee, for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCW1. (Malik, Umair) (Entered: 11/04/2018) |
| 11/16/2018 | 17<br>(1 pg) | Request for Service of Notices Filed by Exeter Finance LLC, c/o AIS Portfolio Services, LP. (Nalkara, Rejoy) (Entered: 11/16/2018) |
| 12/05/2018 | 18<br>(15 pgs; 3 docs) | Notice of Motion and Application for Compensation for Ashley Chike, Debtor's Attorney, Fee: $4000.00, Expenses: $40.00. Filed by Ashley Chike. Hearing scheduled for 1/4/2019 at 10:00 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Proposed Order # 2 Court-Approved Retention Agreement) (Chike, Ashley) (Entered: 12/05/2018) |
| 12/05/2018 | 19 | Meeting of Creditors Held (AMD PLAN 3.1) Debtor appeared. (Stearns, Glenn) (Entered: 12/05/2018) |
| 01/04/2019 | 20 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 02/01/2019 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 01/04/2019. (Dragonetti, Alex) (Entered: 01/06/2019) |
| 01/04/2019 | 21 | (E)Hearing Continued (RE: 18 Compensation WITH Notice of Motion). hearing scheduled for 02/01/2019 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 01/04/2019. (Dragonetti, Alex) (Entered: 01/06/2019) |
| 02/01/2019 | 22 | (E)Confirmation Hearing Continued. Confirmation Hearing to be held on 03/01/2019 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 02/01/2019. (Dragonetti, Alex) (Entered: 02/02/2019) |
| 02/01/2019 | 23 | (E)Hearing Continued (RE: 18 Compensation WITH Notice of Motion). hearing scheduled for 03/01/2019 at 10:00 AM at Courtroom 240 100 S 3rd Street, Geneva, IL, 60134.. Signed on 02/01/2019. (Dragonetti, Alex) (Entered: 02/02/2019) |
| 02/25/2019 | 24<br>(8 pgs) | Amended Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Filed by Alex |

| | | |
|---|---|---|
| | | Wilson on behalf of Scott Andrew Scharlow. (Wilson, Alex) (Entered: 02/25/2019) |
| 02/25/2019 | 25 (1 pg) | Notice of Filing Filed by Alex Wilson on behalf of Scott Andrew Scharlow (RE: 24 Chapter 13 Calculation of Disposable Income (Form 122C-2)). (Wilson, Alex) (Entered: 02/25/2019) |
| 02/25/2019 | 26 (6 pgs) | Amended Chapter 13 Plan and (2) Request(s) for Valuation of Security Filed by Ashley Chike on behalf of Scott Andrew Scharlow. (Chike, Ashley) (Entered: 02/25/2019) |
| 02/25/2019 | 27 (1 pg) | Amended Proposed Order to Employer to Pay the Trustee Filed by Alex Wilson on behalf of Scott Andrew Scharlow. (Wilson, Alex) (Entered: 02/25/2019) |
| 02/26/2019 | 28 (2 pgs) | Notice of Filing Filed by Alex Wilson on behalf of Scott Andrew Scharlow (RE: 26 Chapter 13 Plan/Amended Plan). (Wilson, Alex) (Entered: 02/26/2019) |
| 02/26/2019 | 29 (1 pg) | Amended Order (RE: 13 Order to Employer to Pay the Trustee). Signed on 2/26/2019 (Bowles, Aaron) (Entered: 02/26/2019) |
| 03/01/2019 | 30 (1 pg) | Order Confirming Chapter 13 Plan (RE: 26 Chapter 13 Plan/Amended Plan). Signed on 3/1/2019 (Bowles, Aaron) (Entered: 03/04/2019) |
| 03/01/2019 | 31 (1 pg) | Order Granting Application For Compensation (Related Doc # 18). Ashley Chike, fees awarded: $4000.00, expenses awarded: $40.00. Signed on 3/1/2019. (Bowles, Aaron) (Entered: 03/04/2019) |
| 05/14/2019 | 32 (51 pgs; 4 docs) | Notice of Motion and Motion for Relief from Stay as to 301 Aldrin Ave, Batavia, Illinois 60510. Fee Amount $181,, in addition to Notice of Motion and Motion for Relief from Co-Debtor Stay as to 301 Aldrin Ave, Batavia, Illinois 60510. Filed by Umair Malik on behalf of Wells Fargo Bank, N.A., as Trustee, for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCW1. Hearing scheduled for 5/24/2019 at 09:30 AM at Kane Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134. (Attachments: # 1 Exhibit # 2 Proposed Order # 3 Statement Accompanying |

|  |  |  |
|---|---|---|
|  |  | Relief From Stay) (Malik, Umair) (Entered: 05/14/2019) |
| 05/14/2019 | 33 | Receipt of Motion for Relief from Stay(18-30528) [motion,mrlfsty] ( 181.00) Filing Fee. Receipt number 39735441. Fee Amount $ 181.00 (re:Doc# 32) (U.S. Treasury) (Entered: 05/14/2019) |
| 05/24/2019 | 34 (1 pg) | Order Granting Motion for Relief from Stay (Related Doc # 32), Granting Motion for Relief from Co-Debtor Stay (Related Doc # 32). Signed on 5/24/2019. (Bowles, Aaron) (Entered: 05/28/2019) |
| 07/08/2019 | 35 (2 pgs; 2 docs) | Transfer of Claim. Transferor: Santander Consumer USA Inc. (Claim No. 8, Amount 13776.88) To Wollemi Acquisitions, LLC c/o AIS Portfolio Servic Fee Amount $25 Filed by Wollemi Acquisitions, LLC c/o AIS Portfolio Services, LP. Objections due by 07/29/2019. (Sawarkar, Ketan) (Entered: 07/08/2019) |
| 07/08/2019 | 36 | Receipt of Transfer of Claim(18-30528) [claims,trclm] ( 25.00) Filing Fee. Receipt number 40095636. Fee Amount $ 25.00 (re:Doc# 35) (U.S. Treasury) (Entered: 07/08/2019) |
| 07/11/2019 | 37 (2 pgs) | BNC Certificate of Notice - Notice to Assignor of Assignment of Claim (RE: 35 Transfer of Claim). No. of Notices: 2. Notice Date 07/11/2019. (Admin.) (Entered: 07/12/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/22/2019 09:57:32 | | |
| PACER Login: | mdk06521:2690224:5330324 | Client Code: bk-EJS |
| Description: | Docket Report | Search Criteria: 18-30528 Fil or Ent: filed From: 1/1/2018 To: 8/22/2019 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts |

| | | | for documents: included |
|---|---|---|---|
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

Case 19-22146 Doc 17-1 Filed 08/29/19 Entered 08/29/19 09:57:35 Desc Exhibit
Document Page 62 of 51

Fill in this information to identify your case:

| | | |
|---|---|---|
| Debtor 1 | **SCOTT** | **SCHARLOW** |
| | First Name    Middle Name | Last Name |
| Debtor 2 | | |
| (Spouse, if filing) | First Name    Middle Name | Last Name |
| United States Bankruptcy Court for the: | **Northern District of Illinois** | |
| Case number (if known) | | |

**Exhibit I**

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

| Part 1: | List All Secured Claims |
|---|---|

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports<br>this claim | Column C<br>Unsecured<br>portion<br>if any |
|---|---|---|---|
| 2.1 SELECT PORTFOLIO SERVICING | unknown | $320,174.00 | $0.00 |

2.1

**SELECT PORTFOLIO SERVICING**
Creditor's Name

**116 Betzstone Dr**
Number    Street

**Mansfield, OH 44907-2540**
City    State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a
community debt

**Date debt was incurred**

**Describe the property that secures the claim:**

301 Aldrin Ave Batavia, IL 60510-9477

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☑ Unliquidated
☑ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or
secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Last 4 digits of account number** 9 8 9 0

**Add the dollar value of your entries in Column A on this page. Write that number here:**    $0.00